UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Troy Karpovich, as guardian of Michael
R. Karpovich, a legally-incapacitated person,

      Plaintiff,

v.                                    Civil Action No. 18-12247

City of Detroit, *et al.*,              Sean F. Cox
                                       United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART, AND DENYING IN PART,**
**DEFENDANT PERSON'S MOTION TO DISMISS**

      Plaintiff Troy Karpovich, as guardian of Michigan R. Karpovich, filed this action

asserting claims against the City of Detroit, several of its police officers, and private parties as

well. The federal and state claims asserted in this action arise from an incident that occurred

while some officers were off-duty and working security at a restaurant. This Court declined to

exercise supplemental jurisdiction over the five state-law claims, leaving just the federal claims

remaining. The matter is before the Court on a Motion to Dismiss, brought by Defendant

Frederick E. Person ("Person"). The motion has been fully briefed by the parties and the Court

heard oral argument on January 24, 2019. For the reasons set forth below, the Court shall grant

the motion in part and deny it in part. The Court shall dismiss Count I as to Defendant Person,

because the complaint does not contain any factual allegations, specific to Person, that could

support any of the § 1983 claims or theories asserted in Count I. The Court shall deny the

motion as to Count III, which means that the civil conspiracy claim asserted against Defendant

Person in Count III shall proceed.

## BACKGROUND

On July 18, 2018, Plaintiff Troy Karpovich, as guardian of Michigan R. Karpovich, a legally-incapacitated person, filed this action.

Plaintiff's Complaint asserts claims against the following twelve Defendants: 1) the City of Detroit; 2) Police Chief James Craig; 3) the Detroit Board of Police Commissioners ("BPOC"); 4) Timothy L. Leach; 5) Person; 6) unidentified Detroit Police Officers, named as John Does 1-5; 7) Timothy L. Leach d/b/a T. Leach Enterprise ("Leach Enterprise"); and 8) Eighth Street Ventures, LLC d/b/a Ottava Via ("Ottava Via").

The action is in federal court because this Court has federal-question jurisdiction over Plaintiff's three § 1983 counts (Counts I, II, & III). Plaintiff asked this Court to exercise supplemental jurisdiction over Plaintiff's five state-law counts (Counts IV through VIII).

The matter is currently before the Court on Defendant Person's Motion to Dismiss Pursuant to 12(b)(6) and 12(c), filed on August 23, 2018.

On September 7, 2018, this Court issued an "Order Regarding Recently Filed Motion To Dismiss" (ECF No. 24) that ordered as follows:

> Defendant Frederick Person recently filed a Motion to Dismiss. (ECF No. 19).
> Without expressing any view regarding the merits of the Motion to Dismiss, the Court shall afford Plaintiff the opportunity to cure the purported deficiencies by filing an amended complaint. The Court hereby ORDERS that any amended complaint must be filed within twenty one days of today's date.
> Accordingly, Plaintiff is presented with a choice of how to proceed, given that a Motion to Dismiss has been filed. Within twenty one days of today's date, Plaintiff may either: 1) file an amended complaint, in which case this Court will deny without prejudice the currently pending Motion to Dismiss as moot; OR 2) file a response to the pending Motion to Dismiss, and the Court will decide the

motion based upon the existing complaint.[1]

IT IS SO ORDERED.

(ECF No. 24).

Plaintiff *did not* file an amended complaint within twenty one days of the Court's order.

Rather, on September 28, 2016, Plaintiff filed a response in opposition to Defendant Person's

Motion to Dismiss. (ECF No. 26).

Meanwhile, this Court recently issued an order declining to exercise supplemental

jurisdiction over the state-law claims in this action. As such, the Court need only consider the

pending motion as to the two counts that remain against Defendant Person – Counts I and III.

**Standard of Decision**

Defendant Person brings the instant motion under Fed. R. Civ. P. 12(b)(6) and 12(c).

Motions for judgment on the pleadings under Rule 12(c) are adjudicated under the same standard

as those under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). That rule

provides for the dismissal of a case where the complaint fails to state a claim upon which relief

can be granted. Fed.R.Civ.P. 12(b)(6). The Court must construe the complaint in the light most

favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F3.d

471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient

factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not

suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather,

"[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[1]If Plaintiff elects not to file an amended complaint and the Court rules on the pending
motion, any dismissal may be with prejudice.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, the pending motion tests *the sufficiency of the Complaint*. Nevertheless, Plaintiff's response attaches several exhibits, including a declaration from counsel as to what discovery Plaintiff would like in the case, as well as other exhibits. Plaintiff's brief also discusses a video that counsel claims to have seen, and FOIA requests made by counsel, and makes various factual assertions – that are not included in the Complaint. None of this is to be considered for purposes of this pending motion that challenges the sufficiency of the pleadings.

**Plaintiff's Complaint**

The Complaint states that on March 11, 2018, Person was employed as a Detroit Police Department Detective. It alleges that Person "is being sued in his individual *and/or* official capacity." (Compl. at ¶ 11) (emphasis added).

The Complaint contains a lengthy section titled, "General Allegations" that contains numerous alleged facts regarding the City of Detroit's Police Department, that do not involve the incident at issue in this case.

Starting at page twenty-five, the Complaint then contains a section titled, "Specific Allegations," that contains allegations regarding the incident at issue in this case. It alleges that on March 11, 2018, Michael Karpovich[2] was injured during an incident that occurred after the St. Patrick's Day Parade in the CorkTown neighborhood. It is alleged to have occurred at a restaurant called Ottava Via ("the Restaurant"). (Compl. at 25).

---

[2]Although the plaintiff in this case is Troy Karpovich, as guardian of Michael Karpovich, the Complaint uses "Plaintiff" to refer to Michael Karpovich. (*See* Compl. at ¶ 6). The Court will do the same.

Plaintiff alleges that the Restaurant "hired, retained and/or employed Defendants, Leach, Person, Officers Does and/or Leach Enterprise, to provide door man, crowd control services and management, for its party." (Compl. at ¶ 108).

Plaintiff alleges, upon information and belief, that Defendant Person and the others "drove department-issued vehicles and/or carried department-issued equipment" to the Restaurant on March 11th, "including, but not limited to, their badges and service firearms." (Compl. at ¶ 109). Plaintiff alleges that the Restaurant "knew that it was hiring 'Detroit Cops" to perform doorman duties, crowd control management, among other services, during its party, giving its employees and patrons a heightened sense of security in that the Detroit Police was already on the scene ensuring their safety." (Compl. at ¶ 110). Plaintiff further alleges that the employees of the Restaurant "listened to, took direction from, and deferred to the instructions of" the Defendant Officers. (Compl. at ¶ 111).

Plaintiff alleges that at about 3:30 p.m. on March 11th, Defendant Leach attempted to escort Plaintiff "who was visibly intoxicated, out of the restaurant, after Plaintiff was involved in a verbal, non-physical dispute with another patron." (Compl. at ¶118). Plaintiff further alleges:

119.    Witnesses at the restaurant saw Leach and unidentified Defendant, Officers John Does, and/or employees of Defendant, Ottava Via, drag Plaintiff from the back hallway of the restaurant into the main dining room.

120.    Defendant Leach then pushed Plaintiff backwards using hard hands on Plaintiff's chest.

121.    Plaintiff stumbled but regained his balance and composure.

122.    Plaintiff did not fight back, strike, provoke, assault or otherwise attack Leach or any other Defendant.

123.    No reasonable officer would determine Plaintiff was able to cause any physical harm to Defendants and/or any patron or the general public, i.e.,

Plaintiff did not pose an "imminent threat."

124.    Plaintiff was defenseless.

125.    Defendant Leach then used both arms, with his full body weight, and shoved Plaintiff in the chest with such force, that witnesses said that Plaintiff's body became airborne.

126.    Plaintiff fell backwards, slamming the back of his head on the concrete dining room floor.

127.    While Plaintiff lay on the floor bleeding profusely from his head, instead of rendering first aid, Defendant Leach grabbed Plaintiff's arms, pulled them over his head and attempted to drag him out of the restaurant through the front door, causing additional, life-threatening injuries to Plaintiff.

128.    Defendant Leach only stopped dragging Plaintiff when a female patron grabbed his arm and yelled at him to stop.

129.    Defendant Leach did not in any way attempt to help Plaintiff and/or render any medical treatment. He merely walked to the back the restaurant and, upon information and belief, began making telephone calls and/or sending text messages in an attempt to cover-up his criminal actions.

130.    As Plaintiff laid on the ground bleeding from his obvious head wound, witnesses described him as "gurgling," his eyes "rolling back in his head" and "being in and out of consciousness."

131.    Several patrons called "911" for emergency medical assistance.

132.    Upon information and belief, at least one 911 caller reported the incident to the DPD dispatcher as an "assault."

133.    None of the Defendant police officers, trained in basic life support, provided any assistance to the Plaintiff, in violation of General Order 102.3, Code of Conduct and the Use of Force Policy.

(Compl. at ¶¶ 119-133).

There are no factual allegations in the Complaint to indicate that Defendant Person was involved in the above incident with Plaintiff and Defendant Leach. Indeed, there are no factual allegations that even indicate that Person was present in the area when the incident took place, or

6

thereafter.

The Complaint alleges that, at some point after the incident, but before EMS arrived at

the Restaurant, various officers engaged in a conspiracy to cover up what had happened to

Karpovich:

134. After the unlawful attack, but before emergency medical technicians arrived on the scene, Defendants, Leach, Person, Officers John Doe and/or Defendant, Ottava Via, engaged in a plan to conspire, lie and/or deceive, namely: that Plaintiff slipped and/or tripped and fell and struck his head on the concrete floor.

135. The Defendants acted in concert and actively engaged in a conspiracy to lie, cover-up, falsify and/or tamper with evidence in an attempt to prevent the discovery of the horrific attack and clearly excessive use of force perpetrated by the Defendant police officers and/or employees of Defendant, Ottava Via.

136. Upon information and belief, Defendant Person lied to fellow DPD patrol officers who arrived at the scene in response to one of the many "911" calls, stating that Plaintiff had merely fallen and hit his head. Defendant Person, a detective, commanded the lower-ranking patrol officers to leave the scene and that they were not needed.

137. Upon information and belief, Defendants, Leach, Persons, Officers Does and/or Defendant, Ottava Via, then instructed restaurant employees to draft written statements in furtherance of the conspiracy and cover-up stating the Plaintiff tripped and/or slipped and fell and hit his head.

138. Upon information and belief, Defendants, Leach, Persons, Officers Does, and/or employees of Defendant, Ottava Via, erased, deleted and/or destroyed text and/or voice messages and data from their department-issued and private telephones that contained evidence of their conspiracy to cover-up the unlawful attack of Plaintiff.

139. Upon information and belief, Defendants, Leach, Persons, Officers Does, and/or employees of Defendant, Ottava Via, attempted to commandeer and erase the cell phone videos of restaurant patrons that captured the unlawful attack.

140. Defendant, Ottava Via, through its employees, agents and representatives, lied to investigators claiming that a video of the incident did not exist.

7

. . . .

> 154. Upon information and belief, Defendants, Leach, Persons [sic], and/or Officers Does failed to report the use of force to their department supervisors, failed to complete the mandatory use of force report, actively engaged in a conspiracy to hide the attack, and lied to the subsequent investigating authorities.

(Compl. at ¶¶ 134-154).

Thus, Plaintiff alleges that "Defendant Person lied to fellow DPD patrol officers who arrived at the scene in response to one of the many '911' calls, stating that Plaintiff had merely fallen and hit his head. Defendant Person, a detective, commanded the lower-ranking patrol officers to leave the scene and that they were not needed." (Compl. at ¶ 136).

Plaintiff also alleges that Defendant Person, and other Defendant officers, "then instructed restaurant employees to draft written statements in furtherance of the conspiracy and cover-up stating that Plaintiff tripped and/or slipped and fell and hit his head." (*Id.* at ¶ 137). Plaintiff alleges that Person and others also "erased, deleted, and/or destroyed text and/or voice messages and data from their department-issued and private telephones that contained evidence of their conspiracy" and "attempted to commandeer and erase the cell phone videos of restaurant patrons that captured the unlawful attack." (*Id.* at ¶¶ 138-39).

Count I is titled, "42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth and Fourteenth Amendments." (Compl. at 36). Despite its title, it appears that Plaintiff is attempting to pursue several different kinds of § 1983 claims/theories in it, not just an excessive force claim:

> 167. In violation of Plaintiff's clearly established constitutionally-protected right to be free from excessive force, punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, Defendants *subjected*

8

*Plaintiff to an unreasonable seizure, arrest, detention, excessive force; thereby inflicting horrendous personal injuries upon him.*

168.    In violation of Plaintiff's clearly established constitutionally-protected right to be free from excessive force, punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, Defendants *failed to act to prevent an unreasonable seizure, arrest and the use of excessive force against Plaintiff.*

169.    During the incident, Defendants further violated Plaintiff's clearly established constitutionally-protected due process rights under the Fourteenth Amendment to the United States Constitution, as they were *deliberately indifferent to his obvious serious medical need by: 1) dragging him across the restaurant floor after the criminal attack causing further damage; 2) failing to perform basic life support or first aid, in furtherance of their cover-up and in violation of DPD orders; 3) turning away DPD patrol officers who could have rendered assistance; and 4) preventing restaurant patrons from performing first aid to Plaintiff. All of these actions and/or inactions were done with deliberate indifference to Plaintiff's serious medical need* and all in an attempt to prevent themselves from getting caught.

170.    During and after the incident as described above, *Defendants conspired with one another and Co-Defendants to lie to law enforcement, to obstruct justice, to hide and destroy evidence, to fail to report or document the incident accurately, and to fail to accurately report the incident to medical professionals.*

171.    Any reasonable police officer at the time of this incident would have known that *violently shoving a defenseless man with such tremendous force causing his feet to leave the ground, and his head to crash down on the concrete floor, and then by dragging his lifeless bleeding body without rendering medical aid, was illegal, unnecessary and excessive* under the same or similar circumstances that existed in this case.

(Compl. at 38-39) (emphasis added).

Defendant Person is also named in Count III, which is titled "Conspiracy to Deprive

Plaintiff of Constitutional Rights Pursuant to the Fourth and Fourteenth Amendments." This

Count alleges that several Defendants engaged in a conspiracy to violate Karpovich's civil

rights:

191.    Defendants, Leach, Person, Leach Enterprise and/or Officers Does, were at all times alleged herein, employed as law enforcement officers by the City and/or DPD, and were acting under the color or state law in their capacities of DPD police officers.

192.    That Defendant, Ottava Via, through its limited partners, investors, owners, employees, agents and/or representatives, including, but not limited to: Dennis Fulton, Jorge (the Manager), and/or Abdullah Muhammad, acted jointly with the individual Defendant DPD officers, and *engaged in a plan to conspire, lie and deceive, namely; that Plaintiff slipped and/or tripped and fell and struck his head causing his injuries.*

193.    Upon information and belief, Defendant, Ottava Via, and Defendants, Leach, Person, Leach Enterprise, and Officers Does, *reached an agreement to: 1) delay in calling 911 or summoning medical attention, 2) drag Plaintiff to the front of the restaurant in an attempt to throw him out after he was crucially-injured, 3) falsify, tamper and/or destroy evidence; and 4) lie to investigating authorities regarding the incident and the existence of video surveillance.*

194.    At all times relevant, Plaintiff had a clearly established right to liberty protected in the substantive components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution including his right to personal safety and bodily integrity, as well as protection from unlawful search, unlawful seizure, unnecessary force, unreasonable force and excessive force pursuant to the Fourth Amendment to the United States Constitution.

195.    At all times relevant, as police officers acting under color of law, Defendants were required to obey the laws of the United States including those laws identified under the Fourth and Fourteenth Amendments to the United States Constitution.

196.    *In violation of Plaintiff's clearly established constitutionally-protected right to be free from excessive force, punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the to the United States Constitution, Defendants subjected Plaintiff to an unreasonable seizure, arrest, detention, excessive force; thereby inflicting horrendous personal injuries upon him.*

197.    In violation of Plaintiff's clearly established constitutionally-protected right to be free from excessive force, punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth

Amendments to the to the United States Constitution, Defendants *failed to act to prevent an unreasonable seizure, arrest and the use of excessive force against Plaintiff.*

198. During the incident, Defendants further violated Plaintiff's clearly established constitutionally-protected due process rights under the Fourteenth Amendment to the to the United States Constitution, as they were *deliberately indifferent to his obvious serious medical need by: 1) dragging him across the restaurant floor after the criminal attack causing further damage; 2) failing to perform basic life support or first aid, in furtherance of their cover-up and in violation of DPD orders; 3) turning away DPD patrol officers who could have rendered assistance; and 4) preventing restaurant patrons from performing first aid to Plaintiff. All of these actions and/or inactions were done with deliberate indifference to Plaintiff's serious medical need and all in an attempt to prevent themselves from getting caught.*

199. During and after the incident as described above, *Defendants conspired with one another and Co-Defendants to lie to law enforcement, obstruct justice, hide and destroy evidence, fail to report or document the incident accurately, and fail to accurately report the incident to medical professionals.*

200. Any reasonable police officer at the time of this incident would have known that *violently shoving a defenseless man with such tremendous force causing his feet to leave the ground, and his head to crash down on the concrete floor, then dragging his lifeless bleeding body without rendering medical aid, was illegal, unnecessary and excessive* under the same or similar circumstances that existed in this case.

(Compl. at ¶¶ 191-198) (emphasis added).

Moreover, in addition to a conspiracy claim, this Count repeats the allegations of excessive force and other claims/theories included in Count I.

Plaintiff's Complaint alleges that Internal Affairs later investigated and a "special task force, the Homicide Task Force, took over the investigation on March 14, 2018." (Compl. at ¶ 157). Plaintiff alleges that Defendants Leach and Person were both criminally charged by the Wayne County Prosecutor after this incident, with Defendant Person being charged with "Obstruction of Justice (five-year felony), Neglect of Duty (one-year misdemeanor) and

Tampering with Evidence (four-year felony)."  (Compl. at ¶ 158).

## ANALYSIS

The pending motion is brought by Defendant Person alone.  Two counts remain as to Defendant Person: 1) the § 1983 excessive force claim asserted in Count I; and 2) the § 1983 conspiracy claim asserted in Count III.  The motion challenges the sufficiency of the pleadings as to those two counts,[3] as asserted against Defendant Person.

**I.       To The Extent Either Count I Or Count III Is Asserted Against Defendant Person In His Official Capacity, Should It Be Dismissed As Redundant?**

Plaintiff's Complaint states that Person "is being sued in his individual and/or official capacity.  (Compl. at ¶ 11).  Thus, it is not clear if Plaintiff is asserting Count I or Count III against Person in his official capacity.

Person's motion asserts, as paragraph 13, that "any claims brought against Detective Person in his official capacity should be dismissed as redundant because the entity for which he is alleged to have acted is also named as a party to this lawsuit.  *Foster v. Michigan*, 573 F. App'x 377 (6th Cir. 2014)."  (ECF No. 19 at PageID 152).  Person's brief then addresses this issue on pages 23 to 24:

> A claim brought against a governmental employee in their official capacity is nothing more than a claim against the governmental entity itself. *Monell v. Dept. of Social Srvs.*, 436 U.S. 658, 690-691 (1978); *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).  A suit brought against an individual in their official capacity is not a suit against the actor personally, because the real party in interest is the entity of which the actor is a part. *Id.* When the governmental entity has been named and is a party, the claims against the individual in their "official" capacity overlap with the claims against the entity; the claims, in short, are redundant.

---

[3]The motion also challenged state-law claims, but those claims have been dismissed without prejudice, as the Court declined to exercise supplemental jurisdiction over the five state-law claims.

> *Foster v. Michigan*, 573 F. App'x 377 (6th Cir. 2014); *Petty v. County of Franklin*, 478 F.3d 341, 348 (6th Cir. 2007). In this case, the governmental entities responsible for the allegedly unconstitutional customs, policies, and practices are named in the lawsuit, the claims against defendant Person in his official capacity are superfluous and should be dismissed.

(*Id.* at PageID 185-86).

Plaintiff's motion responds to paragraph 13 by denying the allegations contained in that paragraph, without making any legal argument as to why the official capacity claims against Person should not be dismissed as redundant. Plaintiff's brief does not do so either.

At the January 24, 2019 hearing, Plaintiff's Counsel stated that Plaintiff *does not* wish to pursue any official capacity claims against either Defendant Person or Defendant Leach in this action.

Accordingly, to the extent that either Count I or Count III was asserted against Person in his official capacity, this Court shall dismiss those official-capacity claims as redundant because the City of Detroit is already in this case.

## II.     Defendant Person's Challenges To The Individual Constitutional Claims Asserted Against Him

In his motion, Defendant Person challenges the constitutional claims asserted against him in his individual capacity on several bases. He asserts that: 1) Plaintiff cannot establish that Person's alleged conduct was a proximate cause of his physical injuries, which are alleged to have been caused by Defendant Leach; and 2) Plaintiff has not sufficiently alleged that Defendant Person was acting under color of state law on the date of the incident. His motion also asserts, more generally, that Plaintiff has not alleged a constitutional claim against him because the Complaint is void of any factual allegations that could support the constitutional claims asserted against him.

The Court will look at this latter ground first. As Person's motion notes, "[s]prinkled throughout the complaint are several theories of recovery, all blended together, making it difficult to ascertain at times what, exactly, plaintiff's claims are." (Def.'s Br. at 19).

The Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Thus, the Sixth Circuit "has adopted the requirement that a plaintiff allege 'with particularity' all material facts to be relied upon when asserting that a government official has violated a constitutional right." *Terrance*, 286 F.3d at 842. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," because vicarious liability is not applicable to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

A.   **The Constitutional Claims And Theories Asserted In Count I[4] Fail To State A Claim As To Defendant Person.**

Count I is titled "42 U.S.C. § 1983 – Excessive Force In Violation Of The Fourth And Fourteenth Amendments" and that count is asserted against Defendant Person. Plaintiff's Complaint, however, alleges no factual allegations that could support an excessive force claim against Defendant Person. That is, the Complaint does not contain any factual allegations as to

---

[4]The Court notes that the body of Count I includes allegations relating to a civil conspiracy (*see* Compl. at ¶ 170), but that conspiracy claim will be addressed separately as Count III asserts a civil conspiracy claim as the named claim.

Defendant Person having used excessive force (or any force for that matter) against Plaintiff on the date in question. It does not even allege that Defendant Person was present in the area when Leach used force with Plaintiff. As such, Plaintiff has not alleged a viable excessive force claim against Defendant Person.

Moreover, to extent that the body of Count I tries to assert a § 1983 claim against Defendant Person based on additional theories, the complaint fails to sufficiently allege a claim against Defendant Person based on those theories.[5]

Count I appears to assert a § 1983 claim against Person based on the theory that his conduct amounts to an unreasonable seizure, arrest, or detention. (*See* ¶ 167). But again, as to Defendant Person, there are no factual allegations that would support such a claim being asserted against him. That is, there are no factual allegations that Defendant Person took any actions to seize, arrest, or detain Plaintiff on the date of the incident. The Complaint further asserts that "Defendants failed to act to prevent an unreasonable seizure, arrest and the use of excessive force against Plaintiff" but the Complaint does not allege that Defendant Person was even present in the area where the interactions between Plaintiff and Defendant Leach occurred. Thus, there are no factual allegations that would suggest that Defendant Person would have observed the alleged actions by Leach or had any opportunity to intervene on his behalf.

The body of Count I also appears to try to assert a § 1983 claim against Defendant Person and the other officers, grouped together as "Defendants" who "were deliberately indifferent to his obvious serious medical need" by: 1) dragging him across the restaurant floor after the

---

[5]The same is true for these same claims/theories, that are repeated in Count III, the civil conspiracy count.

criminal attack causing further damage; 2) failing to perform basic life support or first aid; 3) turning away "DPD patrol officers who could have rendered assistance;" and 4) "preventing restaurant patrons from performing first aid to Plaintiff." (Compl. at ¶ 169). But again, as to Defendant Person, there are no factual allegations that he engaged in such conduct. The Complaint alleges that Leach, not Person, dragged Plaintiff across the floor. There are no allegations that Person was present in the area where Plaintiff was prior to emergency medical services arriving and, thus, no allegations that Person would have been in a position to perform first aid, even assuming that he had the skills or training needed to do so. There are no factual allegations that Person took any actions to prevent persons, either patrons, officers, or others, from performing first aid on Plaintiff. As such, there are no factual allegations that would support a § 1983 claim against Defendant Person based on a theory that he was deliberately indifferent to Plaintiff's serious medical needs.

Accordingly, the Court shall dismiss Count I as to Defendant Person alone. Indeed, at the January 24, 2019 hearing, Counsel for Plaintiff agreed that Count I should be dismissed as to Defendant Person.

**B.      The Civil Conspiracy Count (Count III)**

Count III asserts a § 1983 conspiracy claim against Defendant Person and other Defendants. This count alleges Defendants engaged in a conspiracy to cover-up what actually happened on the date of the incident. Plaintiff alleges that Defendant Person was criminally charged with obstruction of justice, and tampering with evidence, in relation to this incident. (*See* Compl. at 34).

"A civil conspiracy is an agreement between two or more persons to injury another by

16

unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 944-45 (6th Cir. 1985). As to such claims:

> Express agreement among all of the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 945. Moreover:

> "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Furthermore, this court has acknowledged that because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire . . . circumstantial evidence may provide adequate proof of conspiracy." *Weberg* v. Franks, 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original).

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Defendant Person's motion challenges the civil conspiracy claim against him on a few grounds.

First, he asserts that the complaint fails to allege a plausible claim against him because it does not include facts that establish that he knew how Plaintiff's injuries actually occurred and, therefore, "the plaintiff cannot establish that Detective Person had the requisite knowledge to formulate a lie, much less to enter into an agreement to do so." (Def.'s Br. at 10).

The Court does not find this to be a persuasive argument, at least not at the motion-to-dismiss phase. The complaint alleges that Defendant Person and others took actions such as deleting and destroying texts, voicemails, and photographs/videos of the attack. It is reasonable to infer, from the factual allegations that are in the complaint, that Defendant Person knew that the injuries did not occur from a fall.

Second, Defendant Person asserts that Plaintiff has failed to sufficiently allege that he acted under color of law. He asserts that Plaintiff alleges no facts to support the allegation that he was acting under color of law, beyond the fact that he works for the police department. (Def.'s Br. at 11).

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by person "acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). If a plaintiff fails to make either showing, the claim fails. *Id.*

"The Supreme Court has not directly addressed whether the activities of an off-duty police officer may be treated as state action under the Fourteenth Amendment." Section 1983 Litigation, § 2:19, *Color of law and state action – Off-duty police officers*. "Section 1983 liability may attach when off-duty police officers invoke the real or apparent power of the police departments, and state and federal courts, based on fact-specific inquiries, have found actions by off-duty police officers to be state action and the basis for claims under § 1983." *Id.* "On the other hand, 'it is by now axiomatic that *under color of state law* means under the *pretense of law* and that acts of [police] officers in the ambit of their personal pursuits are plainly excluded.' The issue in such cases has been determining where to draw the line dividing purely private conduct from state action." *Id.* (citations omitted).

In *Stengel,* the Sixth Circuit "addressed the difficult question of whether a police officer is acting under color of law when, off duty, he acts as a private citizen." *Redding,* 241 F.3d at 533. "The fact that a police officer is on or off duty, or in or out of uniform is not controlling." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). Rather, it is the nature of the acts

performed that determines whether the off-duty officer has acted under color of law. *Id.*

Here, Plaintiff alleges that Defendant Person and the others "drove department-issued vehicles and/or carried department-issued equipment" to the Restaurant on March 11th, "including, but not limited to, their badges and service firearms." (Compl. at ¶ 109). Plaintiff alleges that the Restaurant "knew that it was hiring 'Detroit Cops" to perform doorman duties, crowd control management, among other services, during its party, giving its employees and patrons a heightened sense of security in that the Detroit Police was already on the scene ensuring their safety." (Compl. at ¶ 110). Plaintiff further alleges that the employees of the Restaurant "listened to, took direction from, and deferred to the instructions of" the Defendant Officers. (Compl. at ¶ 111). If that were all that Plaintiff alleged, that would likely not be sufficient.

But Plaintiff also alleges that "Defendant Person lied to fellow DPD patrol officers who arrived at the scene in response to one of the many '911' calls, stating that Plaintiff had merely fallen and hit his head. Defendant Person, a detective, *commanded the lower-ranking patrol officers to leave the scene* and that they were not needed." (Compl. at ¶ 136) (emphasis added).

Plaintiff further alleges that Defendant Person, and other Defendant officers, "then instructed restaurant employees to draft written statements in furtherance of the conspiracy and cover-up stating that Plaintiff tripped and/or slipped and fell and hit his head." (*Id.* at ¶ 137). Plaintiff alleges that Person and others also "erased, deleted, and/or destroyed text and/or voice messages and data from their department-issued and private telephones that contained evidence of their conspiracy" and "attempted to commandeer and erase the cell phone videos of restaurant patrons that captured the unlawful attack." (*Id.* at ¶¶ 138-39).

19

Thus, Plaintiff has alleged that Detective Person commanded on-duty officers to leave the scene and began performing functions at the scene, such as taking witness statements, that an investigative officer would perform. That appears sufficient to create an issue of fact as to whether Defendant Person was acting under color of law for purposes of the conspiracy claim. *See e.g., Redding*, 241 F.3d at 533 (noting, in finding that an off-duty officer had not acted under color of state law, that the off-duty officer had not "in any way instruct[ed]" the uniformed officers who responded to the scene "as to how they should perform their duties.").

Third, Defendant Person asserts that Plaintiff cannot establish that Defendant Person proximately caused Plaintiff's physical injuries because those injuries had already occurred by the time that he is alleged to have had any involvement at the scene.

Even if the Court were to find that Defendant Person did not proximately cause Plaintiffs' *physical injuries*, that does not mean that his constitutional claims against Person would necessarily fail as a matter of law. Although neither party has addressed this, "in an appropriate case, an award of nominal damages is appropriate where no actual injury is shown, but where a constitutional violation nonetheless occurred. *See Carey*, 435 U.S. at 266.*" Curtis v. Voinovich*, 230 F.3d 1357, 2000 WL 1434617 (6th Cir. 2000) (citing *Carey v. Pipus*, 435 U.S. 247, 266 (1978)); *see also Gumsey v. Crawford*, 679 F.2d 666, 667 (6th Cir. 1982). Thus, if Defendant Person's actions relating to the alleged conspiracy to cover up what happened are found to be a Constitutional violation, Plaintiff could possibly obtain an award of nominal damages against him.

**CONCLUSION & ORDER**

For the reasons set forth below, IT IS ORDERED that Defendant Person's Motion to

Dismiss is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that: 1) all claims asserted against Defendant Person in Count I are DISMISSED; and 2) all official capacity claims asserted against Defendant Person in this action are DISMISSED as redundant. The motion is DENIED to the extent that the civil conspiracy claim asserted in Count III shall proceed as to Defendant Person, in his individual capacity.

IT IS SO ORDERED.


Dated: January 29, 2019                          s/ Sean F. Cox
                                                 Sean F. Cox
                                                 U. S. District Judge